ShackelfoRD, J.,
delivered the opinion of the Court.
The record in the case of W. H. Sneed, plaintiff in error, against W. Gh Brownlow, having been filed in this Court, by an appeal taken in the nature of a writ of error, from the Circuit Court of Knox, the *257 relator, upon petition sworn to and supported by the affidavit of his counsel, moved for a mandamus against the Honorable Elijah T. Hall, Judge, holding the Circuit Court for the County of Knox, to command him to sign, seal and make part of the record, the bill of exceptions presented . to him on the trial of said cause, as set forth in the petition.
The facts necessary to be stated, as appears in the petition at the February Term, 1865, of the Circuit Court of Knox County, are, a judgment was rendered against the relator for twenty-five thousand dollars, in favor of W. Gr. Brownlow; in which suit he was attached by his property, to answer. The suit was for wrongs and injustice inflicted by the relator on W. Gr. Brownlow, the defendant. He avows that he had no notice of the pendency of the suit; that he was not legally liable; that he had never injured or harmed Brownlow, and was not guilty of any trespass against him; that if he had had notice, he could have interposed a complete defense to the action.
On the 15th day of February, 1866, during the session of the Court, through his counsel, he caused to be entered a motion to set aside the judgment, and plead to the declaration. At a subsequent day of the same term, (on the 17th day of February,) another motion was made in said cause, similar in purport, to. set aside the judgment rendered against him. These-motions were continued, from the press of business in. the Court, until the June Term, 1866, and after argument of the counsel, it was overruled. At a subsequent day of the term, his counsel proposed to. taka; *258 up the second motion, and asked to he heard, and offered to the Court the petition signed by the relator, and affidavits of different parties, which he had present, and which he offered to read to the Court, showing good cause for setting aside the verdict and judgment, and presented his pleas.
The Hon. E. T. Hall declined to- hear the petition and affidavits read, or argument, and overruled the motion; to which action of the Court, exceptions were taken.
On the 29th of June, 1866, during the term, Judge Hall, presiding, he called up the cause again, and prayed an appeal to the next term of the Supreme Court, and gave a good and sufficient bond, and the appeal was granted. At the same time he tendered to the Judge his hill of exceptions, properly drawn up, stating the facts of the case, and requested him to sign, seal, and make them a part of the record, which His Honor, Elijah T. Hall, refused, who declared that he would sign no hill of exceptions in the case. The record is here by appeal, and he swears he cannot try his cause upon its merits without the benefit of said papers, and he has no means of procuring the same; he, therefore, prays a mandamus against the said E. T. Hall, either alternative or peremptory, to compel him to sign the bill of exceptions, to be made a part of the record in his cause now pending in this Court.
The petition was supported by the affidavits of the counsel of the relator, who prove substantially the facts of the petitioner.
The original petition, with the affidavits and bill of exceptions drawn out, are made a part of the peti *259 tion. They are set forth in the bill of exceptions: First, the notice to Wm. Gt'. Brownlow, of the application to be made. Second, the original petition of the relator, which states that he was not present, nor in the country, when Brownlow was arrested; and in consequence of the disturbed state of the country, could not sooner make his defense; the affidavits of Thos. W. Holtsinger, the proprietor of the Spottswood House, Richmond, Virginia, which states, that the relator was in Richmond, Virginia, during the months of November and December, 1861; also, the affidavit of J. C. Ramsey, who states he caused the arrest of W. G-. Brown-low; the commission of G-eorge W. Brown, formerly Judge of the Knoxville District. All of which he prayed to be made a part of the bill of exceptions, and which are presented with the affidavit of the counsel of the relator.
Two questions are presented for our consideration:
1st. Has this Court, under its organization and constitutional restrictions, being an appellate Court, the right to award the writ of mandamus?
2d. If this Court has the right, do the facts presented in this petition make such a case as would authorize the issuance of an alternate mandamus?
1. This is the first application, so far as we have been able to learn from the reports of the decisions in this Court, in the judicial history of the State, of an application to this Court to award a mandamus against a Circuit Judge, to compel him to appear and show cause why he should not sign a bill of exceptions taken in the trial of a cause before him.
*260 It is a question of great importance to the citizens. If this Court has not the jurisdiction to grant the writ, there should be' some legislative action; for without it, the citizens or suitors would be without remedy, as we have no statute authorizing a mandamus against a Circuit Judge, in such cases. Section 2968 of the Code, provides: “ The facts of the case being fairly stated in the bill of exceptions, the Judge shall sign the same, which, thereupon, becomes a part of the record of the cause.”
A mandamus is defined to be, by the common Jaw writers of England, “a summons, issuing in the King’s name, from the Court of King’s Bench, and directed to any person, corporation, or inferior court of jurisdiction, within the King’s dominions, requiring them to do some particular thing therein specified, which pertains to their office and duty, and which the Court of King’s Bench has previously determined, or at least supposes to be consonant to right and justice.” Blackstone adds: “It issues to the Judges of any inferior Court, commanding them to do justice according to the powers of their office, whenever the same is delayed:” 3 Blackstone’s Commentaries, 110; 5 Pet., 191. Chief Justice Marshall, in the last case referred to, says: “We think it apparent that this definition, and this description to which it is applicable by the Court of King’s Bench, as supervising all inferior tribunals, extends to the case of the refusal, by an inferior Court, to sign a bill of exceptions, when it is an act that pertains to their office and duty. Though this, right was never exercised, by the Court of King’s Bench, in is *261 suing a mandamus, yet the power clearly existed.” This Supreme Court was established by the Constitution, in 1834, and it is provided, in the Constitution, “ It shall possess such appellate and other jurisdiction, as is now conferred by law, on the Supreme Court, under such restrictions and regulations as may, from time to time, be prescribed by law.” Previous to the formation of this Court by the Constitution, the Supreme Court was created by Legislative will; and, in 1809, by An Act of the Legislature, the Supreme Court was organized with appellate jurisdiction.
The provision of the Constitution of the State, in organizing this Court, is very similar in language, to the Constitution of the United States, under which the Supreme Court is established. In the cause referred to, of ex parte Crane, in which this provision of the Constitution of the United States was under consideration, the Court say: “A mandamus to an inferior Court of the United States, is in the nature of an appellate jurisdiction.” The case now under consideration, is, to compel a Circuit Judge to sign a bill of exceptions, to mate it a part of the" record of the case of which we have now the jurisdiction. The object and purpose of the writ is to carry out and perfect the right of the party appealing. The law authorizes the appeal. Upon the execution of the bond, and filing of the record, this Court acquired jurisdiction. Upon it appearing, the Circuit Judge refused to do that which he is compelled to do by law, this Court, upon principle, must have the power, under its appellate jurisdiction, to compel the Circuit Judge to appear, *262 and show cause why he has not performed an act he is hound by law to do.
The act to be performed is a ministerial one, not judicial.
Without the exercise of the appellate jurisdiction, there is no remedy. In criminal cases, the liberty of the citizen would be in jeopardy; and the rights of property would be under the control of the Oircuit Judges, if they refused to sign bills' of exception from time to time, that might be presented on the trial of the cause, and to which the suitors by law were rightfully entitled to make a part of the record.
As much as we are disposed not to exercise a jurisdiction where a doubt exists, yet where the rights or liberty of the citizen would be placed in jeopardy, we think it our duty to take jurisdiction.
In a case that came before the Supreme Court in 1816, of which there is but a short note, on a peti-. tion for a mandamus, to compel the Circuit Judge to proceed to the trial of a cause, the Court held: “They had no original jurisdiction, and they would not take cognizance of any matter, unless it relates to an appeal, which, if' prayed and attempted to he defeated in any way, this Court would aid hy any writ which would overcome and remove the injury:” 5 Haywood, 59. In the case of Miller vs. Rogers, 9 Hump., 236, Turley, Judge, in commenting upon the facts, where it was urged the Judge had refused to incorporate into a bill of exceptions, parts of the evidence, said: “ We must examine the facts here, as contained in the bill of exceptions, and not upon a *263 suppositious conception of what they might have been if the bill of exceptions had been drawn up as they should have been. If a Judge refuses to sign a bill of exceptions, it is no cause of error', the only redress is, by mandamus. In a case properly made out a fortiori, is this so when he will sign an imperfect bill of exceptions, and none other.”
Judge Caruthers, in his History of a Law Suit, 259, in commenting on this principle, says: “If the Judge refuses to sign it, the remedy of the party is to apply to the Supreme Court for a mandamus. So, if he refuses to insert in it what the party contends was really the fact, his only remedy is, a mandamus to compel him.” Though this has not the force of a judicial decision, yet the large experience of the author with the jurisprudence of the State, and his high character as a jurist, gives weight to his opinion upon this question.
The right has been frequently exercised by the Supreme Courts ®f other States.
In Hew York, the question was fully argued before the Supreme Court of that State, and the writ awarded: 6 Johnson’s Rep., 279. In 2 Scamman’s Ill. Rep., 189, a case came before that Court. ■ The question was well considered — the authorities were reviewed — and, upon mature deliberation, as appears from the great number of authorities cited, the writ was awarded. But, not having the Constitution of those States before us, we cannot say whether the Courts had only appellate jurisdiction. _We are of *264 opinion, under the appellate powers of this Court, it has the right to award the writ of mandamus.
2. Having the jurisdiction, has the petitioner presented such a state of facts as will authorize the Court to award the writ? And did the Circuit Judge err in refusing to sign the bill of exceptions?
To determine this question, we must look: to the petition, and the facts embraced therein.
He avers, on the 15th of February, 1866, he entered his motion to set aside the judgment of Brown-low against him, and vacate the proceedings. At a subsequent day of the term, he entered a similar motion, and, through a press of business of the Court, the motions were continued until the June Term, 1866. During the session, the first motion to set aside the judgment, was argurd by the counsel, and overruled by the Court.
The petition was not filed upon ttíe hearing of this motion, nor affidavits read or presented to the Court. At a subsequent day of the» term, the second motion, similar in character to the first, was called up. The petition was not filed, he says, in his affidavit: “We had the petition and affidavit in support of the motion, and offered to read them to the Court, but the Court refused to hear them, and said he would sign no bill of exceptions in the case. Though the Court had overruled the first motion made to vacate and set aside the judgment, he permitted the second motion, to be entered of' record at the February Term, 1866, and continued it to the *265 June Terra, 1866, and entertained it, and acted upon it. Though, this was irregular, the petitioner had the right, in support of it, to present his petition and affidavits; and if the Court refused to hear them, he had the right to have them incorporated in the hill of exceptions. Though the first motion was overruled, it was just preceding the second motion, and at the same term.
The Court entertained the motion and acted upon it, and it was his duty to have heard such petition and affidavits as were offered by counsel in support of it. The declaration of the Judge, as stated in the petition, that he would sign no bill of exceptions in the cause, was conclusive upon the petition, and his only remedy is, by mandamus, to compel him. The law provides, in judgments by attachment against non-resident debtors, or where the party has merely removed himself or property from the State, the judgment may be set aside within twelve months, upon good cause shown. The petitioner states he was a non-resident. We can only look to the petition for the facts in this motion. Being a non-resident, he had the right, within twelve months from the rendition of the judgmént, to make his application to set it aside; and, in support of that motion, to file his petition and affidavits, that the Court might judge of the sufficiency of the cause shown; and if the Court should be of opinion they were not sufficient, he had the right to have them incorporated in his bill of exceptions, and made a part of the record.
In determining this, we can only look to the facts *266 stated in the petition, and the affidavits supporting it. The law required the Judge to sign the bill of exceptions, if the facts are correctly set out. The declaration of the Judge, that “he would not sign any bill of exceptions/’ as appears from the statement in the petition, .was not warranted by law.
It is our duty, as a revising Court, having jurisdiction of the case, to see that every suitor in this Court, has extended to him the rights and privileges to which he is entitled by the laws of the land. The case having been brought to this Court by appeal, and it appearing, from the petition, supported by affidavits, that the Hon. E. T. Hall refused to sign the bill of exceptions, made and presented on the trial of the cause, that the matters and facts therein stated, might be made a part of the record of said cause; and the plaintiff averring, in his petition, that they are material to his rights in this Court; we are, therefore, of opinion, that an alternative mandamus should issue to the Hon. E. T. Hall, Judge, etc., to appear before this Court, at its next regular term, and show cause why he should not sign the bill of exceptions tendered in this case.